IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT CORTEZ,

        Plaintiff,

vs.                                                  CIV. No.  03-1251 BB/LFG

WAL-MART STORES, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court for consideration of Defendant's motion for summary judgment (Doc. 31); Defendant's motion to strike certain exhibits attached to Plaintiff's response brief (Doc. 40); Plaintiff's motion to supplement the summary-judgment record with excerpts of a deposition (Doc. 42); and Plaintiff's motion to supplement the record with a notarized statement (Doc. 44).  The Court will address the evidentiary motions first, as they will determine what evidence will be considered for purposes of the summary-judgment motion.

**Motion to Strike:**  Defendant has moved to strike the following exhibits attached to Plaintiff's response brief:  (1) Exhibit G, an unsworn statement of a witness; (2) Exhibit L, a chart entitled "Associate Demographics"; (3) Exhibit O, a printout of e-mail correspondence between Plaintiff and another employee of Defendant; (4) Exhibit Q, another printout of electronic correspondence; and (5) Exhibit T, an unsigned, anonymous letter.

The motion to strike Exhibit G will be granted; unsworn statements may not be considered for purposes of summary judgment.  *See Hayes v. Marriott*, 70 F.3d 1144, 1148 (10th Cir. 1995) (citing cases holding that unsworn affidavits or statements do not meet the requirements of the

federal rule governing summary judgments); *Barlow v. State of Connecticut*, 319 F.Supp.2d 250, 259 (D. Conn. 2004) (granting employer's motion to strike unsworn statements submitted by plaintiff's co-workers).[1]  Similarly, the anonymous letter submitted as Exhibit T will be stricken; an anonymous letter has even less evidentiary value than an unsworn statement, since the writer of the letter has refused to even identify themselves.  *See, e.g., Sadrud-din v. City of Chicago*, 883 F.Supp. 270, 273 (N.D. Ill. 1995) (anonymous letter inadmissible because writer did not come forward to authenticate it); *cf. United States v. Bello-Perez*, 977 F.2d 664, 671 (1st Cir. 1992) (anonymous correspondence may meet the authentication requirement if it is sufficiently distinctive in its appearance, contents, or other characteristics so as to allow identification of the author).[2]

The Court also agrees with Defendant that Exhibit L is inadmissible and should be stricken.  No information has been provided as to where the exhibit came from, who prepared it, why it was prepared, or what population it concerns.  The Court can guess, since the bottom line of the exhibit refers to "Store Rank," that the exhibit concerns one of Defendant's stores.  The Court can also guess that the exhibit is an attempt by someone to provide a percentage of employees of that store divided by ethnicity and gender.  The Court has no way of knowing,

---

[1] The Court is not persuaded by Plaintiff's argument that the witness who submitted the unsworn statement knew he would be called to testify at trial, and his statement should therefore be considered to have been signed under penalty of perjury.  The statement was not sworn to under penalty of perjury, and cannot be made to be so after the fact.

[2] Again, the Court is not persuaded by Plaintiff's argument that he authenticated this exhibit by submitting an affidavit, Exhibit U, to the effect that the statements of material fact made in the response brief are true and correct.  Plaintiff's affidavit does not identify the author of the anonymous letter, and does not even refer to the exhibit.  A plaintiff may not evade the evidentiary requirements of Rule 56 by issuing a blanket authentication of all exhibits attached to the plaintiff's brief.

however, whether the exhibit is accurate, whether it refers to any store at issue in this case, and how it might be relevant to the issues in this case. Absent such evidentiary foundation, the exhibit cannot be considered for purposes of summary judgment. The Court again rejects Plaintiff's attempt to authenticate this exhibit with his blanket statement that the facts contained in his response brief are true.

As to Exhibits O and Q, the printouts of e-mail correspondence, the Court will deny Defendant's motion to strike, although any hearsay evidence contained in the e-mails will not be considered unless an exception to the hearsay rule applies. These e-mails, to the extent they appear to have been sent by employees of Defendant acting within the scope of their authority, are admissible as admissions of a party. *See Sea-Land Service, Inc. v. Lozen Int'l, Inc.*, 285 F.3d 808, 821 (9th Cir. 2002) (allowing admission of e-mail correspondence under this theory). Both exhibits appear to be e-mails between Plaintiff and employees of Defendant. In both exhibits, Defendant's employees appear to be referring to matters that are within their scope of authority. Therefore, the rule applied in the *Sea-Land* case appears to apply to both exhibits.

**Motion to Supplement the Record with Deposition Excerpts:** Plaintiff asks for permission to supplement the record with excerpts of a deposition given by Charles Wright, a potential witness in the case. Defendant does not object to this request, and the motion will therefore be granted.

**Motion to Supplement the Record with a Notarized Statement:** Plaintiff has submitted a notarized version of the unsworn statement stricken above (Exh. G). Defendant agrees this notarized version cures the defect in Exhibit G. The Court will therefore grant this motion as well, and consider the notarized statement for whatever evidentiary value it may have.

**Motion for Summary Judgment:** Plaintiff's claims in this case are based on Defendant's refusal or failure to promote Plaintiff a number of different times. Plaintiff worked for a number of different Sam's Club stores in a managerial capacity, over a period of sixteen years, in several different locations. Plaintiff sought promotion to general manager or co-manager positions a number of times, and also applied for a regional personnel manager position at the home office of Wal-Mart. Plaintiff maintains that in each instance he was not promoted because he was discriminated against on the basis of age and race, and raises claims under Title VII, 42 U.S.C. §§ 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § § 621-34. Defendant's motion for summary judgment is divided into two main parts. First, Defendant maintains that Plaintiff failed to exhaust his administrative remedies as to many of the promotion decisions he now challenges. Second, as to the claims properly exhausted by Plaintiff, Defendant claims it is entitled to summary judgment on the merits. In addressing Defendant's motion, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

**Claims Not Exhausted:** Plaintiff filed only one charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), on June 25, 2002. [Exh. A, MSJ, Pltf. dep. p. 176; Exh. B, MSJ] Defendant maintains that Plaintiff's claims concerning any denial of promotion occurring prior to August 29, 2001 are time-barred, and that Plaintiff's claims

concerning denials of promotion occurring after June 25, 2002 are barred because Plaintiff never exhausted his administrative remedies as to those denials. The Court agrees with both arguments.

In order to satisfy the prerequisites for filing a discrimination lawsuit in federal court, Plaintiff was required to file a charge of discrimination with the EEOC within 300 days of the date of the discriminatory action. *See Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993). Although the affidavit submitted with Plaintiff's EEOC charge of June 25, 2002 mentions a number of different failures to promote, any such failure that occurred more than 300 days prior to June 25, 2002 is time-barred. As Defendant points out, 300 days prior to June 25, 2002 is August 29, 2001. Therefore, all claims arising out of actions taken by Defendant prior to August 29, 2001 are barred.[3]

In addition, Plaintiff has based some of his claims on allegedly retaliatory actions taken by Defendant after Plaintiff's EEOC charge was filed. These actions include at least two failures to promote Plaintiff, as well as other actions resulting in an alleged constructive discharge. Plaintiff argues that, despite his failure to file additional EEOC charges directed at these actions, he should be allowed to pursue these claims under the "continuing violation" doctrine. Unfortunately for Plaintiff, that doctrine is no longer good law in the Tenth Circuit. *See Martinez*, 347 F.3d at 1210-11. Instead, where a discrete act of discrimination such as a failure to promote or constructive discharge has occurred, even if it occurs after an initial EEOC charge has been filed, an employee is required to exhaust his administrative remedies as to each discrete action. *Id.* Since Plaintiff did not do so in this case, any claims based on actions taken by

---

[3]The Court notes, however, that evidence of otherwise time-barred discriminatory actions may be used as "background evidence" in support of a timely claim. *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003).

Defendant after June 25, 2002 will be dismissed. However, evidence of those actions might be relevant in proving the claims that were properly exhausted. *Id.*

**Merits of Remaining Claims:** According to Defendant, the following promotion decisions fall within the 300-day period preceding Plaintiff's EEOC claim, and were satisfactorily exhausted: (1) promoting Angel Valdez to co-manager of club #6502 in El Paso; (2) promoting Ray Rubio to general manager of club #6502 in El Paso; (3) promoting Juan Jimenez to general manager of the Midland, Texas club; (4) promoting the same Angel Valdez to general manager of club #6408 in Santa Fe; and (5) promoting Pam Spies to Regional Personnel Manager, Region 18A.[4] As to all of these promotion decisions, the familiar burden-shifting analysis must be applied to determine whether summary judgment is warranted. *See Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995).

The first step in the burden-shifting analysis is to determine whether Plaintiff has established a prima facie case of discrimination. Plaintiff does so by producing evidence showing that he is within the protected group, was qualified for the promotion, did not receive the promotion, and instead saw the position filled by a different individual. *Id.* The only one of these factors contested by Defendant is whether Plaintiff was qualified for any of the promotions he sought. Defendant argues that Plaintiff's supervisors decided he lacked the necessary

---

[4]The Court notes that according to Defendant the first listed promotion, of Angel Valdez to co-manager, may have taken place in "early 2001." [Memo in support of MSJ, p. 7] If that is true, the claim based on that promotion would not appear to have been exhausted in a timely manner. However, Defendant has conceded that it is timely, and timeliness of the EEOC charge (as opposed to the existence of any administrative charge whatsoever) is not jurisdictional. *See Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1325 (10th Cir. 2002). The Court therefore assumes Defendant has waived any objection it might have had to the timeliness of the administrative charge as to this promotion, and the Court has not searched the record for evidence as to when, exactly, the promotion occurred.

qualifications to be a general manager, co-manager, or regional personnel manager. Defendant points out that Plaintiff's evaluation scores had been dropping in the years just prior to these promotion decisions. However, Defendant's subjective views as to Plaintiff's qualifications for the positions are not properly considered at the prima-facie-case stage. *See, e.g., Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1510 (10th Cir. 1997) (employer's subjective reasons for actions should not be considered at prima facie stage, but instead at the legitimate-explanation stage). No information has been provided as to any special qualifications that were necessary, in the form of years of experience, educational levels, or similar objective factors, for Plaintiff to be at least minimally qualified for each position that he sought. Therefore, the Court finds, at least for summary-judgment purposes, that Plaintiff was objectively qualified for each position for purposes of the prima-facie-case issue.[5]

     Since Plaintiff has met the prima-facie-case requirement, the burden shifts to Defendant to provide explanations for its actions that are free from discrimination on the basis of age or race. Defendant's legitimate explanation for each promotion decision is that the individual promoted was a better candidate for promotion than was Plaintiff. That assertion is plainly a legitimate, neutral reason for failing to hire Plaintiff--a business is entitled to promote the most qualified individuals, and doing so does not give rise to a claim of discrimination.

---

[5]The Court notes that Defendant presented the following evidence regarding "objective" qualifications for the regional personnel manager position: Plaintiff testified it would be a "high leap" for him to go from his merchandise manager position to the regional position [Exh. A, MSJ, p. 265]; and Pam Spies, who was hired for the position, declared that the "usual path" to such a position is to serve as a general manager or co-manager first. [Exh. E, MSJ] The fact that it would have been unusual for Plaintiff to jump from his position to a regional personnel manager position does not mean it was impossible for him to do so, and does not establish that he was objectively unqualified for the position.

The final step in the burden-shifting process requires Plaintiff to introduce some evidence tending to show that Defendant's explanation for each promotion decision was not true, or was a pretext for discrimination. The Court must analyze the evidence as to each promotion to determine whether Plaintiff has raised a genuine issue of material fact on the pretext issue.

The first promotion at issue is the promotion of Angel Valdez to the position of co-manager of one Sam's Club in El Paso. The evidence as to that promotion is as follows, viewed in the light most favorable to Plaintiff: (1) Carlos Doubleday was the director of operations in charge of Plaintiff's area, and he made the decision whether to recommend Plaintiff for promotion or not [Exh. F, MSJ]; (2) at some time during the year 2000, Doubleday had a meeting with Plaintiff, another assistant manager named Charles Wright, and Plaintiff's immediate supervisor, Greg Marrufo [Exh. A, MSJ, pp. 70-72; Wright depo., supplement to record, pp. 24-31]; (3) during this meeting, Doubleday discussed Troy Aikman, a Dallas Cowboys quarterback, and talked about how Aikman had stepped aside to let younger quarterbacks run the team; Doubleday also stated that Wright and Plaintiff were probably at the point where they needed to step aside and let younger, more energetic managers take over; both Wright and Plaintiff understood Doubleday to be saying that they were over the hill, they needed to move aside and allow younger employees to move up, and they were too old to seek promotions [*Id.*]; (4) Doubleday also, at some undetermined point, asked Marrufo not to submit Plaintiff's name for general manager positions [Exh. H, MSJ]; (5) Angel Valdez, who was promoted to the co-manager position, was in his early 30's at the time, and had approximately three or four years of management experience with Defendant, as opposed to Plaintiff's sixteen or seventeen years [Exh. I, Resp. to MSJ; Exh. A, Reply, Pltf. dep. p. 134]; (6) during one overlapping evaluation period covering part of the

8

year 2000, Plaintiff received a score of 3.7, while Valdez received a 3.62 [Exhs. D, J, Resp. to MSJ]; and (7) Doubleday stated that Valdez was promoted to the co-manager position because he had "higher performance scores" than did Plaintiff; however, Doubleday's assertion has not been supported by any documentary evidence [Exh. F, MSJ].

A central issue in this case is whether the Troy Aikman conversation should be considered a "stray comment" not probative of age discrimination, or a statement by a decisionmaker from which discriminatory intent may be inferred. In the Tenth Circuit, a stray comment is normally one that does not refer directly to the plaintiff, and is ambiguous or does not refer to the particular employment action in question. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (general comment about long-term employees having a diminishing return was a stray comment, because it did not refer directly to plaintiff and was an isolated comment unrelated to the challenged action). In addition, comments made by someone who plays no role in the challenged employment action are not probative of discrimination. *Id.* In this case, however, Doubleday played a central role in the challenged promotion decision. In addition, his Troy Aikman comments referred directly to Plaintiff, apparently informing him that he should step aside and allow younger managers to move up. The comments can reasonably be construed as a statement to Plaintiff that younger managers would be preferred when promotion decisions were being made. Finally, at some time reasonably close to the Troy Aikman conversation, Doubleday told Marrufo, Plaintiff's direct supervisor, not to submit Plaintiff's name for any general manager positions that might come open.[6] From this evidence a reasonable inference may be drawn that

---

[6] The Court surmises that this request was around the same time as the Troy Aikman conversation, because Marrufo only supervised Plaintiff for part of 1999 and all of 2000, which is the exact time-frame in which the alleged conversation occurred. The Court also recognizes that

Doubleday thought older managers were not energetic enough to be general managers or co-managers, and acted on that belief in making his promotion decisions. Therefore, the Court does not consider Doubleday's Troy Aikman conversation a mere stray comment.

In addition to the Troy Aikman conversation, Plaintiff has produced other evidence of pretext, including the fact that he had much more experience as a manager with Defendant than did Valdez, and had recently scored a little higher than Valdez had on a performance evaluation. In the face of that documentary evidence, Doubleday's assertion that Valdez had a higher evaluation score than did Plaintiff simply raises an issue of fact as to whether Valdez did indeed have higher evaluation scores, overall, than Plaintiff. The Court also notes that Doubleday's other reasons for promoting Valdez are entirely subjective, and that subjective factors are notoriously subject to manipulation for purposes of discrimination. *See Bauer v. Bailar*, 647 F.2d 1037, 1046 (10th Cir.1981) (while subjective criteria are not wrongful per se, they obviously provide an opportunity for discrimination). The Court finds that Plaintiff has raised a genuine issue of material fact as to whether Defendant's explanation for promoting Valdez, rather than Plaintiff, to the co-manager position was a pretext for age discrimination.

As to race discrimination, however, the Court can find no evidence raising a factual issue. Doubleday is Hispanic; Valdez is Hispanic; and there is no evidence that Doubleday had any discriminatory tendencies against Hispanics.[7] In fact, Plaintiff himself testified that Doubleday's

---

Doubleday may have only been referring to his belief that Plaintiff was not qualified to be a general manager when he made this request. At this point, however, the Court must draw all inferences in favor of Plaintiff.

[7]Plaintiff did testify that Doubleday had a preference for tall, light-skinned people. Plaintiff did not support his opinion with any facts, and his subjective opinion as to Doubleday's preferences is not sufficient to raise a genuine issue of material fact. Therefore, even if Plaintiff's

bias was based on age, not race. [Exh. A, MSJ, p. 149]  Since there is no evidence that anyone other than Doubleday played a role in the refusal to promote Plaintiff to co-manager of the El Paso Club, and there is no evidence Doubleday acted on the basis of racial bias, summary judgment will be granted as to Plaintiff's claim that he was discriminated against on the basis of race when the co-manager promotion decision was made.

The next two challenged promotions are the general manager position for El Paso, and the general manager position for Midland.  Instead of promoting Plaintiff, Defendant promoted a Hispanic man in his mid-twenties to the El Paso position, and a Hispanic man who was 31 years old to the Midland position.  [Exh. I, Resp. to MSJ]  Both of these employees had much less management experience than did Plaintiff.  [*Id.*]  No information has been provided as to their evaluation scores, so it is not possible to compare those scores with Plaintiff's.  It appears that Doubleday had a central role in both promotions, even though the Midland store was out of his region.  [Exh. F, MSJ]  Therefore, the inference of age discrimination arising out of the Troy Aikman conversation and Doubleday's statements to Marrufo carries over to these promotion decisions.  Again, Plaintiff has raised a genuine issue of material fact as to whether he was objectively more qualified for these positions than were the individuals who were promoted.  As with the co-manager position discussed above, however, there is no evidence supporting

---

claim of race discrimination could be stretched to cover height and variations of skin color within a particular race, he has failed to provide the necessary facts to allow this claim to proceed. Also, Plaintiff attempted to claim that Doubleday's superiors were biased against Plaintiff on the basis of race. He has offered nothing in support of that assertion, however, other than his own supposition. Furthermore, he has not identified which superiors were involved in which promotion decisions. Moreover, three of the four promotions at issue went to Hispanics, although the Court recognizes this fact is not dispositive. For these reasons, Plaintiff's claim of race discrimination on the part of Doubleday's superiors is not sufficient to overcome the motion for summary judgment.

Plaintiff's claim that race discrimination played any role in his failure to receive either of these two promotions. Therefore, while summary judgment will be denied on the age discrimination claim as to these promotions, it will be granted on the claim of race discrimination.

The promotion of Angel Valdez, rather than Plaintiff, to general manager of the Santa Fe Club raises a difficult issue. Doubleday was the central decisionmaker with respect to this promotion, and as discussed above there is evidence from which it can be inferred that Doubleday was reluctant to promote older managers. [Exh. F, MSJ] However, Doubleday has provided a reason for the promotion decision that Plaintiff cannot refute as a matter of fact--as a co-manager at the time of the promotion, Valdez held a higher position in the organization than did Plaintiff, who was an assistant manager. Since there is a genuine issue of fact as to whether age discrimination caused Valdez instead of Plaintiff to be in the co-manager position in the first place, however, it is not clear whether his higher rank in the corporate hierarchy should be allowed to insulate Defendant from liability. Neither party has briefed this issue, and the Court is reluctant to address it at this time. The Court will therefore deny summary judgment on the age discrimination claim concerning this promotion, and allow the parties to argue the issue should the evidence presented at trial require the Court to decide it. Again, however, for the reasons discussed above, Plaintiff has failed to raise an issue of fact as to whether race discrimination played a part in the promotion decision, and summary judgment will be granted on that claim.

The final promotion decision challenged by Plaintiff in his EEOC charge was the position of Regional Personnel Manager ("RPM") that was filled in June 2002. Defendant's neutral explanation for selecting Pam Spies, rather than Plaintiff, for this position was that Spies had already been performing the duties of the position, since she had been an RPM for a different

division, and had done the job well. [Exh. K, MSJ] Plaintiff has provided no evidence tending to cast doubt on these assertions. Furthermore, there is no evidence that Doubleday played any role in the promotion decision, and there is no evidence that the person who made the selection, Cheryl Lippert, harbored any sort of bias on the basis of age or race. [*Id.*]

The only evidence of discrimination Plaintiff has offered with respect to this promotion is a list of employees of Sam's Club, which according to Plaintiff is a roster of the employees at Defendant's home office. [Exh. K, Resp. to MSJ] Plaintiff claims that only six of these employees have Hispanic last names. [*Id.*, highlighted names] This list, standing alone, is insufficient to raise an inference that racial bias played any role in the selection of Spies rather than Plaintiff for the RPM position. "Statistics taken in isolation are generally not probative of ... discrimination." *Jones, supra*, 54 F.3d at 632. Evidence such as that on which Plaintiff relies must compare similarly situated individuals and must eliminate nondiscriminatory reasons for the numerical disparities. *Doan v. Seagate Tech., Inc.*, 82 F.3d 974, 979 (10th Cir. 1996). In this case Plaintiff has made no attempt to compare similarly situated individuals, for example by showing how many Hispanic employees have attempted to obtain jobs at corporate headquarters but been denied that opportunity. In sum, the mere fact that a small percentage of employees at corporate headquarters have Hispanic last names proves nothing as to why Plaintiff was not selected for the RPM position.[8] Unlike the other promotion decisions, there is no evidence that

---

[8]In this section of his brief Plaintiff also points to the fact that Greg Spragg, a regional vice president, called Plaintiff "Shortez" on one walk-through of a store. [Resp. Brief pp. 18-19] Plaintiff also points to his belief that Doubleday favored "non-Hispanic" characteristics such as being thin, above average height, and light-skinned as evidence that discrimination against Hispanics was "endemic" among Defendant's management. As noted above, however, there is no evidence that anyone other than Cheryl Lippert played a role in the decision to hire Spies as RPM rather than Plaintiff. Furthermore, the Court has already dismissed Plaintiff's mere supposition,

the RPM decision was made by anyone who evidenced any sort of bias whatsoever, and the only evidence is that Spies was more qualified for the position than anyone other than another RPM. Summary judgment will therefore be granted as to any claim arising out of this promotion decision.

The Court notes that Defendant discusses another potential claim raised by Plaintiff in his EEOC charge, concerning a denial of his request to attend a training session on a certain weekend. Plaintiff did not respond to this argument, and it appears Plaintiff is not actually attempting to bring a claim as a result of this action. In any event, however, it is undisputed that Plaintiff later attended a different session of that training, or a training similar to the one he was not allowed to attend. [Exh. A, MSJ, p. 194-96] Furthermore, there is no evidence that being unable to attend the training cost Plaintiff any opportunity for advancement, or affected his employment in any tangible way other than the simple fact that he was not able to attend the training at the time he had been scheduled to do so. Under these circumstances, the refusal to allow Plaintiff to attend the training on the dates he wished to do so does not rise to the level of an adverse employment action actionable under Title VII or the ADEA. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406-07 (5th Cir. 1999) (denial of training was not adverse employment action where there was no evidence the denial would tend to result in a change to employee's employment status, benefits, or responsibilities); *see also Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004) (acts that have merely a *de minimis* impact on

---

unsupported by any concrete facts, that Doubleday favored people with the characteristics mentioned by Plaintiff. Finally, the evidence cited by Plaintiff falls far short of a showing that discrimination was endemic at corporate headquarters. No discriminatory motive may be attributed to Lippert as a result of the evidence relied on by Plaintiff.

future job opportunities are not adverse employment actions).  Summary judgment will therefore be granted on any claim arising out of Defendant's refusal to allow Plaintiff to attend the training.

**Conclusion**

Based on the foregoing, summary judgment will be granted as to the following claims:  (1) all claims of race discrimination; (2) all claims arising out of promotions occurring prior to August 29, 2001; (3) all claims arising out of promotions occurring after June 25, 2002; (4) all claims arising out of the failure to promote Plaintiff to the RPM position; and (5) all claims arising out of the refusal to allow Plaintiff to attend training in May 2002.  Summary judgment will be denied as to Plaintiff's age-discrimination claims arising out of the promotion of Angel Valdez to co-manager in 2001; the promotions of Ray Rubio and Juan Jimenez to general manager in 2001; and the promotion of Angel Valdez to general manager in 2002.

**ORDER**

Based on the foregoing Memorandum Opinion,  it is hereby ORDERED that Defendant's motion for summary judgment (Doc. 31) be, and hereby is, GRANTED in part and DENIED in part; Defendant's motion to strike certain exhibits attached to Plaintiff's response brief (Doc. 40) be, and hereby is, GRANTED in part and DENIED in part; Plaintiff's motion to supplement the summary-judgment record with excerpts of a deposition (Doc. 42) be, and hereby is, GRANTED; and Plaintiff's motion to supplement the record with a notarized statement (Doc. 44) be, and hereby is, GRANTED.

Dated this 14TH day of January, 2005.

*(signature)*
BRUCE D. BLACK
United States District Judge

**ATTORNEYS:**
**For Plaintiff:**
Augustine M. Rodriguez

**For Defendant:**
Charles R. Peifer
Christopher T. Saucedo