IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


ROBERT CORTEZ,

                Plaintiff,

vs.                                        No. CIV 03-1251 BB/LFG

WAL-MART STORES, INC.,

                Defendant.


**<u>FINDINGS OF FACT AND RECOMMENDED DISPOSITION</u>**
**<u>ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES</u>**[1]

      THIS MATTER comes before the Court on Plaintiff Robert Cortez's ("Cortez") Motion for

Attorney's Fees [Doc. 111], filed August 12, 2005.  This matter was referred to the undersigned

Magistrate Judge for Findings and Recommended Disposition pursuant to 28 U.S.C. § 636(b)(1)

[Doc. 115].

      Defendant Wal-Mart Stores, Inc. ("Wal-Mart") opposes any attorney's fee for Plaintiff's

counsel on grounds the fee application was untimely filed.  In the alternative, Wal-Mart asks the

Court to reduce the total amount of requested fees on grounds Plaintiff's counsel failed to provide

sufficiently detailed billing records to support the request; because the request includes fees for time

spent pursuing unsuccessful claims; because some of counsel's time was spent on clerical matters; and

---

[1]Within ten (10) days after a party is served with a copy of these findings and recommendations, that
party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations.
A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed
if that party wants to have appellate review of the analysis and recommendations.  If no objections are filed,
no appellate review will be allowed.

because some of the hours spent were excessive.  *See*, Defendant's Response to Plaintiff's Motion for Attorney's Fees [Doc. 112] and Defendant's Supplemental Brief in Opposition to Plaintiff's Motion [Doc. 118].

The Court, having carefully considered Plaintiff's Motion and attached Affidavit of counsel, Defendant's two briefs in opposition, and Plaintiff's Reply Brief [Doc. 113], finds and recommends that the motion should be granted in part and denied in part, as further described below.

## Factual and Procedural Background

Cortez filed a complaint [Doc. 1], pro se, against Wal-Mart on October 30, 2003 alleging that Defendant discriminated him on the basis of age and race in failing to promote him.  On March 9, 2004, after Wal-Mart filed its Answer, Augustine M. Rodriguez, Jr.  entered his appearance as counsel for Cortez.  [Doc. 10].

Cortez initially contended that he was discriminated against on the basis or race, national origin and age in that:  (1) he was not promoted on multiple occasions; (2) he was subjected to a hostile work environment; (3) he was retaliated against; and (4) he was constructively discharged. [Initial Pretrial Report ("IPTR"), Doc. 16, at 2].  Defendant contended that Cortez was not constructively discharged, but rather voluntarily terminated his employment with Wal-Mart; that he was not promoted to the position of Regional Personnel Manager because he did not apply for the position and because he was not qualified; that he was not promoted to the position as General Manager of a store because he was not the most qualified applicant and the position was filled by an employee of Hispanic national origin with superior job evaluations; and that Wal-mart engaged in no retaliatory, discriminatory or other unlawful conduct with respect to Cortez.  [IPTR, Doc. 16, at 3].

At the Fed. R. Civ. P. 16 scheduling conference, Corez's counsel was apprised by the referral magistrate that the majority of Cortez's claims relating to failure to promote were time barred. Cortez's counsel was urged to withdraw these claims, but he declined.

Wal-Mart states, and Cortez does not dispute, that at his deposition on August 12, 2004, Cortez testified that he believed he had been wrongfully denied promotions on 19 separate occasions and that he intended to pursue all 19 claims in the lawsuit.  [Doc. 118, at 2].  Wal-Mart argues that it was, or should have been, plain to Cortez at this point that many, if not most, of these 19 claims were not actionable because they took place more than 300 days before he filed his EEOC charge. Even with Cortez's sworn acknowledgment demonstrating that these claims were untimely, Plaintff's counsel declined to voluntarily withdraw these claims.

On October 1, 2004, Wal-Mart filed a motion for summary judgment [Doc. 31], arguing that Cortez's "failure to promote" claims should be dismissed: (a) for failure to file a timely charge with the EEOC; (b) for failure to exhaust administrative remedies as to promotions and events occurring after the date he filed his EEOC charge; (c) because he was not qualified for the positions he sought; or (d) because his supervisors had legitimate, non discriminatory reasons for promoting other applicants to the positions which Cortez sought.  In addition, Wal-Mart argued that Cortez failed to exhaust his administrative remedies with regard to any retaliation claim, and that he had not established a basis for recovery on his claims of vicarious liability.

Cortez's response to the motion for summary judgment prompted a motion [Doc. 40] by Wal-Mart to strike certain exhibits which Cortez had attached to his response.  Cortez thereafter filed a motion [Doc. 44] to allow supplementation of one of his exhibits.  The usual responses and replies followed, and on January 14, 2005, Judge  Bruce D. Black entered a Memorandum Opinion and

Order [Doc. 50], granting Cortez's motion to supplement, granting most of Wal-Mart's motion to strike certain exhibits, and granting in part and denying in part the motion for summary judgment.

In his Memorandum Opinion and Order, Judge Black upheld, in substantial part, Wal-Mart's contention that Cortez failed to exhaust his administrative remedies with respect to his claims based on failure to promote. Judge Black ruled that any claim for alleged failure to promote which occurred more than 300 days prior to June 25, 2002 (the date of Cortez's sole EEOC claim) were time-barred; and that Cortez's claims based on retaliatory action allegedly taken by Wal-Mart after the EEOC charge was filed would be dismissed for failure to exhaust administrative remedies. The remaining five separate incidents of discriminatory failure to promote were subjected to the burden-shifting analysis of Jones v. Unisys Corp., 54 F.3d 624 (10th Cir. 1995).

With respect to four of these incidents, the Court granted summary judgment as to Cortez's claims of racial bias but allowed the age discrimination claims to go to the jury. Summary judgment was granted as to the entire fifth claim. Thus, of the 19 claims of discriminatory failure to promote, only four remained after the Court's summary judgment ruling, and these four incidents were to go to the jury only on the claim of age discrimination. And one of these four claims was dismissed during trial, after Cortez failed to present evidence that the particular promote occurred within 300 days before he filed his EEOC charge. Cortez prevailed on the remaining three claims, which went to the jury at trial on February 23-25, 2005.

Even cursory review of Title VII law should have alerted Plaintiff's counsel that these untimely claims should not have been pressed. The decision to pursue these untimely claims and the refusal to voluntarily withdraw them, even after the magistrate's admonishment and the verification of their untimeliness at Cortez's deposition, significantly increased motion practice and litigation

4

costs.

On March 16, 2005, Wal-Mart filed a motion [Doc. 84] for judgment as a matter of law, or in the alternative for remittitur.  At a hearing held April 4, 2005, Judge Black denied the motion for judgment as a matter of law.  [*See*, Doc. 89].  In an order [Doc. 91] dated April 15, 2005, he granted Defendant's request for remittitur of a portion of the jury award and denied Plaintiff's earlier motion [Doc. 67] for front pay damages.

Judgment was entered on May 19, 2005.  [Doc. 94].  On May 26, prior to expiration of the automatic stay provided in Fed. R. Civ. P. 62(a) and in violation of that rule, Cortez filed a Motion for Clerk to Issue Writ of Execution [Doc. 95].  This prompted Wal-Mart to file a motion [Doc. 96] to extend, actually to enforce, the stay of proceedings while it sought approval of its supersedeas bond for purposes of appeal.  A hearing on Wal-Mart's application for a bond was held on June 7, 2005.  Plaintiff's counsel did not appear at the hearing, and the bond was approved.  [*See*, Doc. 99].  Wal-Mart filed its Notice of Appeal [Doc. 101] on June 7, 2005.  The premature and unauthorized attempt to collect a judgment, and failure to consent to Defendant's motion to stay, again significantly increased costs of litigation.

Meanwhile, on April 26, 2005, the Clerk taxed costs against Wal-Mart in the amount of $5,068.69.  Wal-Mart sought review of the Clerk's assessment of costs, and a hearing was held on July 19, 2005, at which the Court granted Wal-Mart's motion to exclude expert witness fees but upheld other categories of costs.  [Docs. 109, 110].  On August 12, 2005, Cortez filed the Motion for Attorney's Fees currently at issue.  The request to tax expert fees should not have been made as these costs are simply not taxable under the statute or the Court's rules.  Seeking improper costs again increased litigation expenses and fees.

## Discussion

Assuming a timely application, the prevailing plaintiff in an age discrimination action is entitled to recovery of a reasonable attorney's fee. 29 U.S.C. §§ 626(b), 216(b); <u>EEOC v. Clay Printing Co.</u>, 13 F.3d 813, 816-17 (4th Cir. 1994). As noted above, Wal-Mart opposes Plaintiff's Motion for Attorney's Fees, arguing that it should be denied in toto as untimely filed or, in the alternative, Wal-Mart argues that the fee amount requested should be reduced.

### *Timeliness of Application for Attorneys' Fees*

Cortez failed to file his Motion for Attorney's Fees within the time allowed by the Federal Rules of Civil Procedure and this Court's Local Rules. Fed. R. Civ. P. 54(d)(2)(B) provides that, "[u]nless otherwise provided by statute or order of the court, the motion [for attorney's fees] must be filed no later than 14 days after entry of judgment." This period is extended in D.N.M.LR-Civ. 54.5, which states that the motion "must be filed and served within thirty (30) calendar days after entry of judgment. Failure to file and serve within this time constitutes waiver of a claim to attorney's fees."

Even under the more liberal 30-day time period allowed by Local Rule, Cortez's motion was late. Judgment in this case was entered on May 19, 2005. Cortez's Motion for Attorney's Fees was filed on August 12, 2005, or 85 days after judgment. Cortez did not seek the Court's permission to file a late application, and he provided no explanation in his original Motion for his failure to meet the deadline. In his reply in support of the motion, Cortez argued that he delayed filing the motion until after the Court resolved the dispute over costs and in any event, he argued, the proceedings had been stayed on Wal-Mart's motion since June 7, 2005. Cortez also contends there was no prejudice to Wal-Mart, because Plaintiff's counsel told Wal-Mart in July 2005 that he intended to seek

attorney's fees.  [Doc. 113, at 1-3].

Plaintiff's excuses for the late filing border on the frivolous.  The Court's June 7 order did not stay all proceedings in the case.  Rather, Wal-Mart notes, Defendant was simply seeking additional time to secure its appeal bond, which was approved by the Court a few days later.  Once the bond was approved and Defendant filed its notice of appeal, execution of the judgment was stayed during the pendency of the appeal.  Fed. R. Civ. P. 62(d).  In addition, as Wal-Mart points out:

> This request [to stay proceedings pending approval of the bond] was technically unnecessary, since the Plaintiff's request for execution was premature.  Under the rules, Sam's Club [*i.e.,* Wal-Mart] had until June 20, 2005 to file its appeal bond.  Out of an abundance of caution, Sam's Club asked for permission to file the appeal bond so that there was no confusion about its timeliness.

[Doc. 118, at 6 n.1].

The automatic stay that follows the filing of a notice of appeal does not extend the deadline for filing an application for attorney's fees.  Fed. R. Civ. P. 54, Advisory Committee Notes, 1993 amendments:  "A notice of appeal does not extend the time for filing a fee claim based on the initial judgment . . . ."

> [T]he defendant requests the court refrain from awarding attorney fees and costs until the resolution of post-trial motions and any associated appeals . . . .  Fed. R. Civ. P. 54(d)(2) provides that a motion for attorney fees must be filed no later than 14 days after entry of judgment. Rule 54(d)(2) does not require or allow attorneys to wait until the resolution of appeals to seek fees. If the status of the parties is altered by an appeal, the court will reevaluate the fee request at that time.

Nelson v. Kansas, No. 99-4184-JTM, 2003 WL 22871685, at *2 (D. Kan.  Nov. 13, 2003).

Nor does the cost dispute extend the time for filing a motion for attorney's fees.  Cortez cites no authority for this proposition, and the Court rejects it.  Any additional attorney's fees generated

7

by a cost dispute could be awarded based on a supplemental fee request.

Cortez also argues that he placed Defendant's counsel "on notice" as to his intention to file for attorney's fees, at an appellate mediation conference in July 2005. Any such comment would have come after the deadline for seeking fees had already expired, and this passing comment does not excuse Plaintiff's late filing.

Deadlines are set for a reason. With regard to motions for attorney's fees:

> One purpose of this provision is to assure that the opposing party is informed of the claim before the time for appeal has passed . . . . Prompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind. It also enables the court in appropriate circumstances to make its ruling on a fee request in time for any appellate review of a dispute over fees to proceed at the same time as review on the merits of the case.

Fed. R. Civ. P. 54, Advisory Committee Notes, 1993 Amendments.

The Court would therefore be well justified in denying Cortez's Motion for Attorney's Fees, given the late filing and lack of reasonable excuse therefor. As Wal-Mart points out, courts in other cases have denied attorney fee applications on grounds of untimeliness. *See, e.g.*, American Constitutional Law Foundation, Inc. v. Muftic, 956 F.2d 958 (10th Cir. 1992) (upholding district court's denial of request for fees as untimely filed under local rules, although noting local rule allowed the court, in its discretion, to excuse compliance); Sunwest Silver, Inc. v. International Connection, Inc., No. 97-838 PK/WWD, slip op. (D.N.M. May 7, 1998).

This Court's local rules also specifically provide that their requirements "may be waived by a Judge to avoid injustice." D.N.M.LR-Civ. 1.7. *See also*, Hernandez v. George, 793 F.2d 264, 266-68 (10th Cir. 1986) ("although district judges must follow local rules when adherence furthers the

policies underlying the rules, they have discretion in applying and interpreting local rules").   The Local Rules' time deadline promotes a procedure that more efficiently and expeditiously resolves these matters.  However, in this case, rather than deny fees altogether, an alternative approach would appear more just, and that alternative approach will be to impose a fee reduction due to the violation. The Court will therefore exercise its discretion and will consider the tardy fee application.

### *Defendant's Request for Reduction in Amount of Fees*

Wal-Mart takes issue with Plaintiff's application for attorney's fees on grounds that the billing records produced in support of the application are insufficiently detailed and utilize "block" billing which does not allow for adequate review.  In addition, Wal-Mart argues that some of the hours for which Plaintiff's counsel seeks reimbursement were spent pursuing unsuccessful claims and therefore should be eliminated, while other hours were spent on clerical matters which should be billed at a lower rate.  Defendant also contends that Plaintiff's counsel spent excessive time on several matters, as reflected in the timesheets.

The starting point for determining the amount of an appropriate attorney fee is to calculate the number of hours reasonably expended and to multiply that number by a reasonable hourly rate. Ramos v. Lamm, 713 F.2d 546, 552 (10th Cir. 1983), *criticized on other grounds* by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 107 S. Ct. 3078 (1987).  The resulting figure is referred to as the "lodestar."  Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1249 (10th Cir. 1998).

Cortez's attorney bills his time at $150 per hour.  He states that he has been practicing law for eight years and "has had plenty of experience" litigating civil rights cases.  [Doc. 113, at 7]. Client and counsel agreed to the hourly rate by contract.  Wal-Mart challenges this hourly rate [Doc.

9

112, at 4-5].  However, the Court finds it to be reasonable, given prevailing rates in the area and counsel's eight years' experience, which he set forth in an attachment to his reply in support of the Motion for Attorney's Fees.  [Doc. 113, att. 2].[2]

However, the Court further finds that many of the hours billed by Cortez were unreasonable and therefore recommends a reduction in amount of the fee requested.

It is incumbent upon Cortez, as the party requesting fees, to demonstrate the amount of time spent on specific tasks and to show that the time expended was reasonable. Case, *supra*, at 1249-50. In other words, Cortez must "prove and establish the reasonableness of each dollar, each hour, above zero." Jane L. v. Bangerter, 61 F.3d 1505, 1510 (10th Cir. 1995).

> Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks . . . .  A district court is justified in reducing the reasonable number of hours if the attorney's time records are "sloppy and imprecise" and fail to document adequately how he or she utilized large blocks of time.

Case, *supra* at 1250.  Indeed, the Court "must reduce the actual number of hours expended to a reasonable number to ensure services an attorney would not properly bill to his or her client are not billed to the adverse party." United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1234 (10th Cir. 2000).

The Tenth Circuit has further explained that "block billing," or lumping multiple tasks into one single time entry, while not *per se* forbidden, is not favored.  Cadena v. Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000); Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir.

---

[2]The Court advises counsel that a better practice would have been to include this information in the original application for attorney fees.

1998).  This practice makes it difficult, if not impossible, for a court to determine if reasonable recompense is sought.  When tasks are billed as a block, the Court is unable to assess whether reasonable time was spent on any of the specific categories within the block and whether the hours claimed were excessive, redundant, or unnecessary.

Moreover, attorneys typically do not bill a client for every hour expended in litigation, and attorneys are required to exercise professional billing judgment regarding the amount of time actually billed.  "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended."  Case, *supra* at 1250.  Thus, when considering attorney fee requests, the Court has an obligation to exclude from the calculation hours that were not "reasonably expended" in pursuing the litigation.  "A district court should approach this reasonableness inquiry 'much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients . . . .'"  Robinson, *supra* at 1281, *quoting from* Ramos v. Lamm.

In considering whether hours are reasonably expended on specific tasks, the Court may, in addition to considering whether the tasks being billed would normally be billed to a paying client, also consider the complexity of the case, the number of hours spent on each task, the number of reasonable strategies pursued, potential duplication of billing, and the responses necessitated by the maneuvering of the other side.  Ramos, *supra* at 554.

The court may then accept the "lodestar" amount proposed by the movant as the reasonable amount to award, or it may make adjustments, depending on the circumstances.  The court may elect to discount the requested fees by making a general reduction of hours so as "to achieve what the court determines to be a reasonable number."  Case, *supra* at 1250.  However, the court may not simply "eyeball" the fee request and reduce it arbitrarily.  Robinson, *supra* at 1281.

With these principles in mind, the Court turns to four specific areas of concern raised by Defendant.

A.    *Block Billing and Vague or Insufficiently Itemized Entries*

Wal-Mart claims that many of counsels' entries are vague, and some of counsel's timesheets were prepared using the frowned-upon "block billing" method.  The Court agrees.

Some examples (and there are numerous others) of block billing include:

"Mtg. w/Clt. re: Case Background & Discovery; Witnesses Greg Marrufo, Charles Wright, Doubleday; Signed HIPAA Releases" (4.0 hours, 06/04/04).

"Worked on Answers to Interrogatories & Req.; Reviewed Documents for Production" (2.5 hours, 06/22/04).

"Telephonic Disc. w/Opp. Coun. re: Approval of Order to Allow Ext. of Time for Expert Reports; Received & Docketed Order for Settlement Conf." (0.5 hours, 07/16/04).

"Received & Reviewed Transcript of Deposition of Robert Cortez & Filed Reply on Motion to Extend Discovery" (3.5 hours, 08/23/04).

"Continued Researching Case Law for Response to Motion for Summary Judgment; Received & Reviewed Order to Extend Discovery Deadlines for Deposition" (4.5 hours, 10/8/04).

"Disc. w/Dr. McDonald re: Amended Damages Evaluation & Faxed to Opp. Coun. & approved Statement of the Case; Mtg w/Clt." (3.5 hours, 02/04/05).

"Continued Drafting Plaintiff's Trial Brief; Review of Exhibits, Motions & Case Law; Deposition of Brian McDonald" (8.5 hours, 02/14/05).

"Preparation for Trial; Review of Discovery & Exhibits; Received Documents From Opp. Coun. for Defendant's Exhibits re: Angel Valdez & Juan Jimenez" (10.0 hours, 02/15/05).

"Preparation for Trial; Worked on Exhibit Books; Reviewed Produced Documents" (10.0 hours, 02/19/05).

The "block billing" problem is exacerbated by counsel's habit of including clerical tasks along

with professional functions in one unit, and billing at the professional rate for the entire block of time.

Some examples (and there are several others) include:

> "Drafted and Filed Entry of Appearance; Faxed to Opp. Coun." (0.5 hours, 03/09/04).

> "Completed and Filed Plaintiff's Initial Disclosures Certificate of Service & Served on Opposing Counsel" (2.0 hours; 04/02/04).

> "Received & Reviewed Endorsed I.P.T.R.; Docketed Dates, Schedule" (1.5 hours, 04/22/04).

> "Completed Final Draft of Plaintiff's Interrogs/Reqs. & Served on Opposing Counsel" (3.5 hours, 07/07/04).

> "Drafted Motion to Extend Deadlines for Expert Report; Faxed to Opp. Coun." (1.0 hour; 07/15/04).

> "Completed & Faxed Motion to Extend Discovery Deadlines to allow Deposition of Charles Wright to Opp. Coun.; Prepared Notice of Deposition of Charles Wright" (3.0 hours, 09/03/04). (The Court notes that a later entry, on 10/26/04, also states that counsel "Prepared & Served Notice of Deposition of Charles Wright," which appears to duplicate the 09/03/04 entry).

> "Received & Docketed Defendant's Notice of Completion of Briefing" (0.5 hours, 11/20/04).

Functions such as "faxing," "filing" and "docketing" should not be billed at counsel's rate of $150 per hour; however, it is impossible to tell from these block entries how much time was devoted to the clerical tasks and how much to the professional work.   See below, subheading C, for a more detailed discussion of "Clerical Time Billed as Attorney Time."

In addition, many of the entries are too vague to allow meaningful review of whether the time expended was reasonable, and whether some of the entries may be duplicative.  Some examples (and there are others) include:

> "Worked on Plaintiff's Initial Disclosures" (2.5. hours, 03/29/04).

"Received & Reviewed Fax From Opp. Coun. re: Defendant's Initial Disclosures" (0.5 hours, 04/01/04);

"Received & Reviewed Fax From Opp. Coun. re: Initial Disclosure Supplementation" (0.5 hours, 04/06/04);

"Received & Reviewed Produced Discovery Material from Opp. Coun." (2.5 hours, 08/24/04); "Received Supplemental Discovery Materials from Opp. Coun." (0.4 hours, 8/25/04); "Reviewed Produced Discovery Materials from Opp. Coun." (3.5 hours, 08/26/04); "Clt. Mtg. to Review Produced Discovery Materials and Transcript of Deposition" (2.0 hours, 08/27/04); and "Continued Review of Produced Discovery Materials" (3.0 hours, 08/28/04).

"Prepared for Deposition of Carlos Doubleday and Greg Marrufo" (5.0 hours, 09/01/04).

"Continued work on answering Supplemental Discovery" (3.0 hours, 10/06/04)

"Continued Researching Case Law for Response to Motion for Summary Judgment" (6.5 hours, 10/06/04).

The Court finds that the block billing and vague entries, exemplified above, require a reduction in the amount of requested attorney's fees.

B.    *Excessive Time*

Very few of counsel's entries in his time sheets are made in increments lower than 0.5 hours, although standard practice is to submit time records billed in increments of tenths of an hour.  This gives the appearance that counsel "rounds up" to 30 minutes each time he makes an entry.  In addition, for some of the entries, the time expended is simply too long for experienced counsel to spend on the task described in the entry.  Some examples (and there are others):

"Drafted and Filed Entry of Appearance; Faxed to Opp. Coun." (0.5 hours, 03/09/04).  The Entry of Appearance [Doc. 10] filed by counsel for Plaintiff on March 9, 2004, consisted of two lines. This is a document that likely exists in template form on Plaintiff's computer, and his clerical staff

14

would only need to change the caption.  The entire process would not likely have taken 10 minutes, yet 30 were billed.  Faxing to opposing counsel need not have been done by an attorney; at any rate, if Cortez's attorney is the one who faxed it, he was at most performing a clerical function and should not have billed attorney rates.  Finally, while a law firm may charge a client the reasonable cost for faxing, the clerical function is not separately billed.  Cortez's attorney's inclusion of this and similar time simply serves to "pad" the bill.

Counsel has five entries (between 03/15/04 and 03/26/04) noting time spent drafting sections of the Provisional Discovery Plan and I.P.T.R., for a total of eight hours.  These documents are "stock" forms that require very little customization.  This claimed time is excessive.

On April 1, 2004, counsel notes that he "Received & Reviewed Fax From Opp. Coun. re: Defendant's Initial Disclosures," 0.5 hours.  There is no indication of how lengthy or complex this document may have been, nor what it contained that would have taken 30 minutes to review.  A similar entry was made for April 6, 2004, noting receipt and review of fax from opposing counsel regarding Initial Disclosure Supplementation, 0.5 hours.  Again, there is no indication of what was in the document that took 30 minutes to review.  A similar entry occurs on April 7, 2004: "Received & Reviewed Endorsed Provisional Disc. Plan," 0.5 hours.  On April 22, 2004, counsel notes that he received and reviewed the IPTR and that he docketed dates; this took an hour and a half.  These forms, taken from the Court's own website, are stock, "boilerplate" forms with little need for the attorney to do more than provide a brief statement of the case and a paragraph or two of general contentions.  The list of witnesses is drawn from the initial disclosures.  The Court finds all of these time statements to be excessive.

In one of the few entries made in an increment smaller than 0.5, counsel notes on May 6,

15

2004, that he spent a third of an hour (20 minutes) receiving and reviewing Defendant's Request for

HIPAA Authorization Forms for Signature. This is a simple form which requires no legal analysis,

and there is no justification for billing 20 minutes of an attorney's time to "receive and review" it.

On May 17, 2004, counsel notes that he "Received & Reviewed Opp. Coun. Ltr. Requesting

Cortez Deposition on June 14, 2004; Teleph. Disc. W/Clt.," for which he billed 0.5 hours. On June

10, 2004, counsel notes that he received and reviewed a notice to take deposition of his client, Robert

Cortez and then called the client to arrange an appropriate date. This took 0.5 hours. On July 21,

2004, an almost identical entry was made, again for 0.5 hours. On July 29, 2004, counsel noted that

he received and reviewed an amended notice to take deposition of Robert Cortez and discussed the

notice with Cortez, again for 0.5 hours. Each of these entries is excessive for the task involved, and

there is no specific explanation as to why this sequence of events was repeated several times. The

Court can imagine that dates may have had to be shuffled, but counsel should not require the Court

to exercise its imagination in the face of apparently duplicative and excessive billing.

On July 15, 2004, Plaintiff's counsel took an hour to draft an unopposed motion to extend

deadlines for expert report and fax it to opposing counsel. This motion [Doc. 21] is simple, short and

contains no citation to authority nor any legal argument. It is simply unreasonable that this motion

would take an hour to prepare. When the order granting the motion came in on July 28, 2004,

counsel noted that he spent 0.5 hours receiving and reviewing it. This Order [Doc. 22] was a simple

granting of the request for an extension. The entire order consists of five short sentences. In any

event, it had been drafted by Plaintiff's counsel, so he already knew what it contained. The Court

added a single line to the order drafted by counsel, noting that all other deadlines would remain the

same. A claim that it took an experienced attorney half an hour to "review" this order defies logic.

This is especially so when one considers Plaintiff's counsel prepared, and presumably has already billed for the time in preparing, the order, and the only change was the six-word insertion by the Court.

On August 9, 2004, counsel noted that he reviewed and approved a joint motion to extend discovery deadlines.  For this, he billed one hour of time.  This motion [Doc. 24] was prepared by defense counsel.  It was simple and direct and contained no citations to authority nor any substantive legal analysis which could have required one hour to review.  The time reported is simply excessive and entirely unreasonable.  On August 19, 2004, counsel noted 0.5 hours to receive and review the one-page order [Doc. 25] resulting from this motion.  Although the Court cannot say for certain, it is likely that defense counsel originally served the proposed order on Plaintiff's counsel, along with the joint motion, and that counsel had already had one chance to "review" it.  Again, 30 minutes is simply excessive.

On August 25, 2004, counsel notes that he spent 0.4 hours, or 24 minutes, "receiving" supplemental discovery materials from Defendant's counsel.  This does not include any time "reviewing" these materials, as that was done in ensuing days.  It is unclear what "receiving" the materials means, but presumably it includes retrieving them from a mailbox and opening the envelopes or packages.  These are not professional functions, and the $60.00 bill for 0.4 hours of the attorney's time to "receive" materials is completely unjustified.

There are many, many other examples of time entries that appear excessive to the Court.  Defendant lists 65 entries [*see* Doc. 112 at 7-10] which it considers to represent excessive billing.  While the Court does not necessarily agree that each of these 65 entries is excessive, the examples detailed above indicate the kind of problems which the Court has noted, problems which permeate

counsel's time records, and which support the conclusion that a significant reduction in fees is necessary.

C.      *Clerical Time Billed as Attorney Time*

As noted above, the timesheets contain numerous references to counsel's having "faxed," or "received," or "docketed," or "filed" certain documents.  Indeed, such references are almost more common than not in these entries.  These are tasks that would generally be performed by the law firm's clerical or paralegal staff or assumed in the office's overhead and not separately billed. Counsel asserts in his reply in support of the Motion that he:

> does not have support staff to do clerical work, and that is why Plaintiff's attorney does not charge for clerical work such as short telephone calls, photocopying, faxing and court filing of documents. Defendant twists the entries to suit its needs.  The entries reflect the time a particular task took to complete and the ultimate disposition of a particular action, whether it be filing, faxing or docketing.

[Doc. 113, at 7].

It was Plaintiff's counsel, not Defendant, who listed such things as faxing, filing, serving and docketing in his billing records.  As noted above, the Court has found that several of the entries represent excessive time spent on what should have been routine tasks.  If counsel's entries include "the time a particular task took to complete and the ultimate disposition of a particular action, whether it be filing, faxing or docketing," these are improper entries for purposes of charging attorney fees.  Counsel is not entitled to reimbursement at an attorney's hourly rate for performing clerical tasks of this nature.  "<u>Ramos</u> instructs that court should evaluate whether the services are normally part of office overhead.  If so, they should be disallowed."  <u>EEOC v. MTS Corp d/b/a Supercuts.</u>, No. Civ. 94-1473 LH/W.D., slip op. (D.N.M. Mar. 26, 1998) (*citing* <u>Ramos v. Lamm</u>, *supra*).  All

of these clerical function charges are improper.

The Court finds that a reduction in the requested amount, due to multiple instances of billing for clerical functions, is justified in this case.

      D.     *Reduction for Partial Success*

Plaintiff's lawsuit, as originally asserted in the complaint and as described in the IPTR, was much broader than the claims on which he ultimately prevailed at trial. Cortez originally claimed racial discrimination, hostile work environment, retaliation, and constructive discharge; all of these claims were eliminated prior to trial, leaving only the claims of discrimination based on age. In addition, of the 19 instances of alleged discriminatory denials of promotion, all but four were dismissed on summary judgment, and another was eliminated on directed verdict, leaving three claims of age discrimination for the jury's consideration.

Wal-Mart argues that Plaintiff's fee request should reduced because he was not completely successful with respect to all the contentions for which he originally sought recovery. Plaintiff counters that all of his claims, successful and unsuccessful, were related and sufficiently intertwined that it would be unrealistic and unfair to separate out and eliminate fees for time spent on the claims that did not result in recovery.

> There is no doubt that a district court may reduce a lodestar calculation on the grounds that a prevailing party has achieved only partial success . . . [*citing* Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933 (1983)]. However, as the Court noted in Hensley, many civil rights suits involve multiple claims based on a common core of facts or . . . related legal theories . . . . In such cases, it is inappropriate for a district court to evaluate the individual claims as though they were discrete and severable. Litigants should be given the breathing room to raise alternative legal grounds without fear that merely raising an alternative theory will threaten the attorney's subsequent compensation. Instead, a court should focus on the

19

significance of the overall relief that the prevailing party has won:
The result is what matters.  [Internal quotation marks omitted].

Robinson v. City of Edmond, *supra*, at 1283.  The Tenth Circuit goes on in Robinson to note that "when a plaintiff achieves the principal goal of her lawsuit, lack of success on some of her interrelated claims may not be used as a basis for reducing the plaintiff's fee award," and that when a plaintiff achieves most or all of what he aimed for in the civil rights lawsuit, the attorney should be fully compensated.  Id.  However, even when the successful and unsuccessful claims are interrelated, a reduction may still be made if the "overall relief" obtained in the case is less than full vindication.  Id., at 1283-84.

This would be especially true in a case where legally meritless claims, *i.e.*, all of Cortez's claims that were patently time-barred, were pursued.  Not only did that decision significantly increase the costs of litigation by compelling Defendant to engage in discovery that would not have been necessary, and to file motions for summary judgment, but it also needlessly increased the amount of time Plaintiff's counsel had to devote to the case.  It would be improper to countenance and reward that kind of litigation tactic.

The Court declines to go piece by piece through counsel's billing and determine how many hours were spent on claims that were unsuccessful and then reduce the award by some percentage that reflects the number of futile hours spent.  This quantitative approach has been rejected by the Tenth Circuit, as the appropriate inquiry is a qualitative one in which the Court must assess the relative importance of the various claims and "qualitatively conside[r] the relationship between the amount of the fee and the results."  Jane L. v. Bangerter, *supra*, at 1511.

This litigation was whittled down from a multi-claim lawsuit in which Plaintiff sought millions

of dollars in recovery based on allegations of, *inter alia*, a hostile work environment, retaliation, constructive discharge, and 19 separate instances of discrimination over many years, to a relatively straightforward case involving three instances of age discrimination in failure to promote.

The Court notes as well that the overwhelming majority of the separate claims of discrimination were clearly subject to dismissal for failure to file EEOC charges within the time allotted by law.   Plaintiff argues that he "was not counseled to submit additional complaints by the EEOC investigator assigned to his case, and therefore Plaintiff lost those claims at trial." [Doc. 113, at 3].  While this may be true, his attorney had no business pressing these claims in the litigation, when it was obvious that they would eventually, inevitably, have to be dismissed.  Counsel should not be compensated for spending time on claims that were clearly futile.

Cortez can rightly claim to have prevailed on his age discrimination claims, and it is beyond doubt that vindication of an individual's civil rights promotes a public purpose.  *See*, Phelps v. Hamilton, 120 F.3d 1126, 1131 (10th Cir. 1997).  However, this is not a landmark discrimination case with far-reaching effects.  It has been held that the "most critical factor" in determining the reasonableness of a fee award is the "degree of success obtained." Id., at 1132.  The Court finds that the relatively narrow extent of Cortez's victory, when compared with what was initially alleged and sought, and taking into consideration the failure of Plaintiff's counsel to recognize the futility of some of claims he pursued in this action, justifies a reduction in the fee amount.

## Conclusion

In light of the findings on the issues of untimeliness of the fee application, block billing and vagueness of timesheet entries, excessive time spent on some matters in the case, billing of time for clerical functions, pursuit of meritless claims, and the factor of partial success, the Court determines

that the request for attorney's fees should be reduced by 40% in order to arrive at a reasonable fee, given the overall circumstances of this litigation.  The Court therefore recommends that Plaintiff's request for attorney's fees be reduced in amount from $77,867.42 to $46,720.45.

## **Recommended Disposition**

That Plaintiff's Motion for Attorney's Fees [Doc. 111] be granted in part and denied in part, as detailed above, by reducing the amount of attorney's fee to a total of $46,720.45.


Lorenzo F. Garcia
Chief United States Magistrate Judge

22